```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
```

```
_____
                               )
IN RE: 1900 M RESTAURANT       )
ASSOCIATES, INC.               )
                               )
        DEBTOR                 )
-------------------------------)
                               )
1900 M RESTAURANT ASSOCIATES,  )
INC.                           )
        APPELLANT,             )
                               )
        v.                     )    Civ. Action No. 05-570 (EGS)
                               )
UNITED STATES,                 )
                               )
        APPELLEE.              )
_____)
```

**MEMORANDUM OPINION**

Before the Court is the appeal of the appellant, 1900 M Restaurant Associates, Inc. ("1900 M Restaurant"), pursuant to 28 U.S.C. § 158(a)(1), from an order of the United States Bankruptcy Court for the District of Columbia. By an order dated January 24, 2005, the bankruptcy court granted the United States's motion for summary judgment and dismissed the action. *See 1900 M Restaurant Associates, Inc. v. United States (In re 1900 M Restaurant),* 319 B.R. 302 (D.D.C. 2005). This Court agrees with the legal conclusions and the result reached by the bankruptcy court. Therefore, the bankruptcy's court's Order is affirmed.

1

**I.   BACKGROUND**[1]

Appellant is a restaurant operating in the District of Columbia under the tradename "Rumors."  On April 9, 2003, appellant filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.  The majority of the appellant's obligations consisted of priority tax claims owed to the District and the Internal Revenue Service ("IRS").

On January 26, 2004, appellant submitted an offer-in-compromise ("OIC") to the IRS on IRS Form 656, pursuant to 26 U.S.C. § 7122.  An OIC is an offer submitted by a taxpayer to pay less than what is owed in federal taxes.  On February 6, 2005, appellant's offer was returned as nonprocessable because under IRS procedures, IRS cannot accept for review any OICs from taxpayers with open, pending bankruptcy cases.  Further, appellant had not filed several tax returns, the liability for which was the subject of the offer.

When appellant's offer was returned as nonprocessable, appellant filed suit in the bankruptcy court for a declaratory judgment that IRS's policy to return as nonprocessable offers submitted by taxpayers in open bankruptcy proceedings violated 11 U.S.C. § 525(a).  Appellant requested the bankruptcy court to

---

[1] The facts of the case are adopted from the parties' respective statement of material facts as to which there is no genuine dispute filed with their respective cross motions for summary judgment before the bankruptcy court.

2

compel IRS, pursuant to 11 U.S.C. § 105, to consider appellant's OIC – not to approve and accept the offer – but to merely consider it.

The parties filed cross motions for summary judgment before the Bankruptcy Court of the District of Columbia. The bankruptcy court granted the government's motion, and dismissed the action. On appeal, appellant presents two issues: (1) whether the bankruptcy court erred as a matter of law in determining that 11 U.S.C. § 525(a) does not apply to the IRS when it refused to consider an OIC under 26 U.S.C. § 7122 during the pendency of a bankruptcy case; and (2) whether the bankruptcy court erred as a matter of law in determining that 11 U.S.C. § 105 is not available to compel the IRS to consider appellant's OIC.

The bankruptcy court held that § 525(a) does not apply to the IRS's refusal to consider an OIC submitted under § 7122 during the pendency of a bankruptcy case. *In re 1900 M Restaurant*, 319 B.R. at 305. Specifically, the court determined that a debtor's "right to submit an offer-in-compromise" is not a "license, permit, charter, or franchise" within the ordinary meanings of those words. *Id*. Further, the court found that it is not a grant either within any of the ordinary meanings of that word. *Id*.

Then the court turned to the question of whether § 105(a) provides an alternative means to compel the government to

consider appellant's OIC.  After examining the legislative history of § 105(a), the court held that § 105(a) is similar to the All Writs Statute, 28 U.S.C. § 1651. *Id*. at 306.  The court concluded that to the extent that the debtor seeks to compel performance of an alleged duty, the relief the debtor seeks is in the nature of mandamus. *Id*.  The court held that the appellant failed to meet the requirements of a writ of mandamus:  (1) appellant has a clear right to relief; (2) the appellee has a clear duty to act; and (3) there is no other adequate remedy available to appellant. *Id*.

Focusing on the second element, the court found that the IRS had no clear duty to the appellant under § 7122 to consider and process its OIC. *Id*. at 307.  Section 7122(a) does not command the Secretary of the IRS to consider an OIC, rather it only provides that the Secretary "may" compromise a tax liability. *Id*. The court held that a discretion to compromise carries with it the discretion not to exercise the discretion. *Id*.  In short, in exercising the statutory discretion of § 7122(a), the Secretary was free to specify what types of offers will be processed. *Id*. at 309.

Alternatively, the court also held that mandamus is unavailable on an alternative ground. *Id*. at 311.  Because mandamus is an extraordinary remedy that is available only if other relief is inadequate, the court concluded that mandamus is

not appropriate here because the appellant already has at its disposal another way to present a payment proposal to the IRS, that is much akin to an OIC. *Id*. at 312.  The court explained that appellant presented to the IRS a proposed plan of reorganization, and that "through this process, [appellant] has received a decision regarding the acceptability to the IRS of the treatment [appellant] proposes. Because [appellant] has already achieved a decision regarding the acceptability of the treatment his plan proposes for the IRS's claims, [it] has achieved [its] end in filing an offer-in-compromise, and mandamus is inappropriate. . . . It follows that a decision on the acceptability of [appellant's] plan achieved the end of what [appellant] desired, even though not employing the means [appellant] desired."  *Id*.

**II.   DISCUSSION**

   **A.   Standard of Review**

On appeal, a summary judgment decision entered by a bankruptcy court is reviewed *de novo* both as to conclusions of law and findings of fact. *U.S. v. Spicer*, 57 F.3d 1152, 1159 (D.C. Cir. 1995).  Summary judgment in bankruptcy is governed by Bankruptcy Rule 7056, which incorporates the standard of Rule 56 of the Federal Rules of Civil Procedure. *Id*.

   **B.   Appellant's Argument**

Appellant argues that, notwithstanding the various strengths

5

and/or weaknesses of the appellant's OIC, the IRS summarily rejected it because it refused to consider offers while a bankruptcy proceeding was pending.  Appellant argues that IRS's refusal to even consider its offer violates 11 U.S.C. § 525(a) because that section prohibits discrimination against individuals in bankruptcy on the sole basis of their bankruptcy.  Appellant concedes that it is within IRS's discretion to accept or deny its OIC, but to not even consider and process the offer violate § 525(a).

Appellant does concede that an OIC is not a "license, permit, charter, or franchise," as articulated in § 525(a), within the ordinary meanings of those terms.  However, appellant argues that an OIC is "other similar grant" under § 525(a) because the term "grant" is to be interpreted broadly given the legislative history which states that § 525(a) is not exhaustive in terms of describing the various forms of discrimination which that statute was intended to prevent.  Moreover, the phrase, "other similar grant" is not defined by the Bankruptcy Code.  In short, OIC is an "other similar grant,"  thus, the IRS violated the anti-discriminatory provisions of § 525(a) when it refused to even consider appellant's offer due to its open bankruptcy case.

Further, appellant argues that because § 525(a) lacks any remedial provisions in its own rights, 11 U.S.C. § 105(a) is necessary to remedy the IRS's conduct in this case.  It argues

6

that § 105(a) provides the bankruptcy courts with broad equitable powers to order "any" type of order that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. Accordingly, because the IRS's policy of refusing to consider appellant's OIC while it is in bankruptcy violates § 525(a), § 105(a) may be invoked to remedy the IRS's conduct in this case by ordering IRS to consider appellant's OIC.

### C. Appellee's Argument

The government argues that § 525(a) is not applicable to this case because an OIC is not a "license, permit, charter, franchise or other similar grant." Further, it argues that the case appellant relies on for its argument is clearly distinguishable. The government also points out that legislative history does not support appellant's contention that "other similar grant" should be interpreted broadly to encompass OICs. The government argues that the legislative history is clear that any expansion of § 525(a) is limited to licensing-type actions and not just any type of interests and actions. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 367; Sen. Rep. No. 95-989-, 95th Cong., 2nd Sess. 81 ("This section permits further development to prohibit actions by governmental or quasi-governmental organizations that perform licensing functions. . . ."). The government contends that IRS does not perform licensing functions and the appellant is in no way being denied an opportunity to

engage in its business.  In short, the legislative history confirms that § 525(a) is not intended to cover the present situation.

Next the government argues the bankruptcy court below correctly determined that § 105(a) did not authorize it to order the IRS to consider appellant's OIC.  First, § 105(a) only authorizes an order that will effectuate another express bankruptcy court provision.  Once appellant's argument that the IRS violated § 525(a) has failed, there is no other provision.  Therefore, the order appellant seeks is one of mandamus under § 525(a), and the appellant has failed to meet the required factors for a writ of mandamus to issue in this case.

### D.  Analysis

#### 1.  Offers-in-Compromise

The Internal Revenue Code provides that taxpayers may compromise any civil or criminal tax obligation by submitting an OIC.  *See* 28 U.S.C. § 7122.  Only the IRS may process an OIC, and only under the various regulations, rules, guidelines, and revenue procedures established under 28 U.S.C. § 7122.  Section 7122(a) provides:

> (a) Authorization.  The Secretary may compromise any civil or criminal case arising under the internal revenue law prior to reference to the Department of Justice for prosecution or defense; and the Attorney General or his delegate may compromise any such case after reference to the Department of Justice for prosecution or defense.

An OIC under § 7122 "must be submitted according to the

8

procedures, and in the form and manner, prescribed by the Secretary."  26 C.F.R. § 301.7122-1(d)(1).  An OIC under § 7122 is generally submitted on IRS Form 656.  The IRS may refuse to process an OIC and return the OIC to the taxpayer if the IRS determines that "the offer was submitted solely to delay collection or was otherwise nonprocessable." 26 C.F.R. § 301.7122-1(d)(2).  What constitutes a nonprocessable offer is determined by IRS policy.

On July 12, 2004, the Internal Revenue Service Office of Chief Counsel issued a notice explaining IRS's policy of returning OIC of taxpayers currently in bankruptcy as nonprocessable. *See* CC-2004-25, 2004 IRS Chief Counsel Notice LEXIS 18 (July 12, 2004) ("Notice").  The Notice explained that the Commissioner of IRS had determined that processing OIC of taxpayers in bankruptcy was not in the government's best interest and that IRS would instead consider payment proposals by such taxpayers as part of the plan confirmation process.  The plan confirmation process permits IRS to exercise its discretion to accept different treatment of priority claims than is provided for by the Bankruptcy Code.  In sum, if a taxpayer is in bankruptcy at the time the OIC is submitted, IRS will return the offer as nonprocessable, therefore, § 7122 is unavailing to such a taxpayer.

## 2. IRS Did Not Violate 11 U.S.C. § 525(a) When It Refused to Consider an Offer-In-Compromise Submitted During the Pendency of a Bankruptcy Case.

11 U.S.C. § 525(a) is known as the anti-discrimination provision of the Bankruptcy Code. It provides that a government unit may not discriminate against a person with respect to certain grants solely because that person is, or has been, a bankrupt party. Specifically, § 525(a) provides:

> [A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, [or] discriminate with respect to such a grant against . . . a person that is or has been a debtor under this title . . . solely because such bankrupt or debtor is or has been a debtor under this title. . . .

The legislative history of § 525 provides in part:

> This section is additional debtor protection. It codifies the result of *Perez v. Campbell,* 402 U.S. 637 (1971), which held that a State would frustrate the Congressional policy of a fresh start for a debtor if it were permitted to refuse to renew a drivers license because a tort judgment resulting from an automobile accident had been unpaid as a result of a discharge in bankruptcy.
>
> In addition, the section is not exhaustive. The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination. The courts have been developing the Perez rule. This section permits further development to prohibit actions by governmental or quasi-governmental organizations that perform licensing functions such as a State bar association or a medical society, or by other organizations that can seriously affect the debtors' livelihood or fresh start, such as exclusions from a union on the basis of discharge of a debt to the union's credit union. . . . This section is not so broad as a comparable section proposed by the Bankruptcy Commission, H.R. 31, 94th Cong., 1st Sess. § 4-508(1975), which would have extended the prohibition to any discrimination, even by private parties. Nevertheless, it

>   is not limiting either, as noted.  The courts will continue
>   to mark the contours of the anti-discrimination provision in
>   pursuit of sound bankruptcy policy.

HR Rep No. 595, 95th Cong, 1st Sess 366-367 (1977); S Rep No. 989, 95th Cong, 2d Sess 81 (1978).

"A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary common meaning." *Perrin v. United States*, 444 U.S. 37, 42-43 (1979).  "The plain language of legislation should be conclusive except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair*, 489 U.S. 235, 242 (1989).

When the actual language and the legislative history of § 525(a) are analyzed, it is clear that an OIC is not like a "license, permit, charter, franchise or other similar grant" within the ordinary meanings of those words.  In order for an OIC to fit within the statute, appellant must establish that an OIC is a grant and is similar to a license, permit, charter or franchise.  This the appellant cannot do.  Appellant attempts to stretch the meaning of "other similar grant" to include offers-in-compromise, but essentially it is comparing apples with oranges, and that fact cannot be avoided when one looks closely at *Stoltz v. Brattleboro Housing Authority*, 315 F.3d 80 (2d Cir. 2002), appellant's primary case.

The *Stoltz* Court reviewed whether a public housing lease fell under the protections of § 525(a). The Court examined the commonly understood definitions of a "grant" and a "lease" to determine whether a lease is a grant similar to a "license, permit, charge, or franchise." *Id*. The *Stolz* Court defined grant as: (1) "a transfer of property by deed or writing;" and (2) "an agreement that creates a right of any description other than the one held by the grantor." *Id*. It defined lease as "a contract by which a rightful possessor of real property conveys the right to use and occupy that property in exchange for consideration." *Id*. The Court concluded that a public housing lease is a grant by which a public housing authority conveys a public housing tenant the right to use and occupy public housing in exchange for rent. *Id*. Having determined that a lease is a grant, the *Stolz* Court next determined whether a public housing lease is a grant "similar" to a "license, permit, charter or franchise" under § 525(a). It concluded that it is because the public housing lease, like the other property interests specifically protected under § 525(a), is unobtainable from the private sector, and is essential to a debtor's fresh start, which was stressed in the legislative history of § 525(a).

In looking at the definition of "grant" as articulated by the Second Circuit, the Court concludes that an OIC is not a grant. An OIC does not constitute a transfer of a property right

or an agreement that creates certain rights.  In sum, because an OIC is not like a "license, permit, charter, franchise or other similar grant" within the ordinary meanings of those words, the government did not violate 11 U.S.C. § 525(a).[2]

### 3. 11 U.S.C. § 105 Does Not Authorize an Order to the IRS to Consider Appellant's Offer-In-Compromise.

Having determined that the IRS's policy of returning OICs as nonprocessable from taxpayers in bankruptcy proceedings does not violate § 525(a), the Court must now turn to whether 11 U.S.C. § 105(a) nonetheless permits the Court to order IRS to consider appellant's OIC.

11 U.S.C. § 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provision of this title."  The legislative history to § 105(a) states that it "is similar in effect to the All Writs Statute, 28 U.S.C. § 1651 . . . The section is repeated here for

---

[2] The Court notes that the only case to hold that the IRS violated § 525(a) is *In re Mills*, 240 B.R. 689 (S.D. W. Va. 1999).  Appellant urges the Court to consider the policy rationales relied on by the *Mills* Court.  Rather than looking at the specific language of § 525(a) to determine whether an OIC is a grant that is similar to a "license, permit, charter, or franchise," the *Mills* Court's conclusion emanates from a policy angle.  Finding that it is unfair to treat taxpayers in open bankruptcy proceedings differently by not affording them an opportunity open to other taxpayers, the Court held that the government violated the anti-discrimination provision of the Bankruptcy Code.  Section 525(a) does address discriminatory treatment of debtors, however, Congress did not prohibit all discriminatory treatment, rather it chose its language carefully, and the courts must look to the plain language and meaning of the statute to determine what conduct is covered by the statute.

13

the sake of continuity from current law and ease of reference, and to cover any powers traditionally exercised by a bankruptcy court that are not encompassed by the All Writs Statute." H.R. Rep. 95-595, 95th Cong., 1st Sess., at 316-17 (1977).

The Court agrees with the bankruptcy court that since there is no other express bankruptcy provision upon which the Court is asked to act, the order appellant seeks is one of mandamus. The "remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances." *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002). Mandamus is available only if: (1) the appellant has a clear right to relief; (2) the appellee has a clear duty to act; and (3) there is no other adequate remedy available to appellant. *Id*.

"When a statute uses a permissive term such as 'may' rather than a mandatory term such as 'shall,' this choice of language suggests that Congress intends to confer some discretion on the agency, and that courts should accordingly show deference to the agency's determination." *Dickson v. Secretary of Defense*, 68 F.3d 1396, 1401 (D.C. Cir. 1995). Section 7122 clearly states that the "Secretary <u>may</u> compromise any civil or criminal case. . .". By using the word "may," Congress vested discretion in the Secretary, and thus, it logically follows that discretion to compromise carries with it discretion not to exercise that discretion. Accordingly, because appellee does not owe a clear

duty to act, as required under the second prong of seeking mandamus relief, mandamus is not available here.

Further, the Court adopts the bankruptcy court's reasoning as to why the holdings of *In re Mancher*, 2003 WL 23169807 (Bkrtcy. W.D. Va. June 5, 2003) and *In re Holmes*, 298 B.R. 477 (M.D. Ga. 2003) will not be followed. The bankruptcy court explained how the Bankruptcy Code's "fresh start" principle and the common sense realities of bankruptcy reorganization do not require that the government be ordered to consider appellant's OIC under § 105(a). Accordingly, having found the bankruptcy court's reasons to be persuasive, and to the extent that the appellant is challenging them in its brief, the Court adopts the bankruptcy court's well-reasoned conclusions.

## III. CONCLUSION

The Court concludes that the bankruptcy court correctly determined that the appellee did not violate 11 U.S.C. § 525(a) and that appellant is not entitled to the relief it seeks under 11 U.S.C. § 105. Accordingly, the bankruptcy court's decision is **AFFIRMED**.

**Signed:    Emmet G. Sullivan**
**            United States District Court Judge**
**            September 20, 2006**